IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI

SOUTHERN DISTRICT OF MISSISSIPPI
FILED

JUN 29 2020

ARTHUR JOHNSTON
BY_____ DEPUTY

UNITED STATES OF AMERICA

V.                              Case No. 3:03-CR-30-HTW-JCS-2

KATHLEEN NELSON

DEFENDANT'S EMERGENCY MOTION AND
BRIEF FOR COMPASSIONATE RELEASE IN
RESPONSE TO COVID-19 PANDEMIC

COMES NOW, Kathleen Nelson, Defendant, pro se
and respectfully moves the Court for an order modifying
her conditions of incarceration for "extraordinary and
compelling reasons" specified in this motion. Ms. Nelson
submits this motion pursuant to 18 U.S.C. Section
3582(c)(1)(A), as modified by the "First Step Act", which
the President signed into law December 22, 2018. As
explained in the motion, the modification sought is
warranted based on Ms. Nelson's age (about to be 62),
current housing in a low level at FMC Carswell, numerous
and serious health problems, and the imminent threat
to her health and life posed by the outbreak of COVID-19
in the United States. Due to the coronavirus pandemic,
the motion can and should be handled on an
expedited basis, and without delay. The defendant
would show this Honorable Court as follows, to wit:

(1)

Background:

    1. Ms. Nelson was convicted of 18 U.S.C. Section 371, Section 641, Section 1344 and Section 1512. She was sentenced on April 13, 2006 to life imprisonment.

    2. Ms. Nelson is an almost 62 year old woman who suffers from lupus, rheumatoid arthritis, moderate asthma, borderline diabetic, hypertension, has a heart murmur, and has kidney issues.

    3. Ms. Nelson has been incarcerated for over 15 years and her health continues to deteriorate.

For those at high-risk such as Ms. Nelson, the C.D.C. recommends social distancing, staying at home as much as possible, frequent handwashing, cleaning and disinfecting the home, having essential supplies on hand and avoiding crowds and travel. None of these are feasible at her current location.

    Ms. Nelson is in a low security environment with close quarters, common areas, common telephones and computers, and thus multiple sources of infection. Ms. Nelson reports there are over 300 women in her unit at the facility, that the washer they use to clean their clothes do not have hot water and that they are not allowed to purchase bleach to kill germs and bacteria. Although they have cold water and sometimes soap to wash their hands, they have no hand towels

so most of the time they dry their hands on their clothing. There is no hand sanitizer as well.

There are five (5) computers and six (6) telephones for all 300+ inmates to use and no way to sanitize these devices between uses. All inmates are confined to their cells except to use the phones, computers, or to pick up their one (1) hot meal a day and return to the cell.

During the current pandemic where she is housed there has been one (1) death, a normal, healthy, pregnant thirty (30) year old who this place refused to get medical attention for until it was too late, and has even failed to acknowledge her death until exposed in the media.

> "The Government could have predicted and prevented Andrea Circle Bear's death. Federal authorities were put on notice when the president of the union for Correctional Officers at the Fort Worth prison filed a whistle-blower complaint on April 7, 2020 claiming the medical center "knowingly and willingly" misled the public by putting prisoners and staff members at risk." "She told officials for four (4) days she was sick and they ignored her," stated by her grandmother to Rhonda Dupree NBCS News on May 1, 2020.

Nobody in the U.S. Bureau of Prisons has even bothered to apologize to the family and even failed to keep them updated. Andrea never got to hold her newborn baby girl and her drug sentence of 26 months became a death sentence. BOP's efforts and guidelines failed to protect her, so what makes the government think they will protect someone like Ms. Nelson?

A recent article (June 4, 2020) by Shannon Firth, a Washington correspondent for Med Page Today highlighted a statement from Senator Dick Durbin (D-Ill) during the Senate Committee hearing:

> "At least 68 inmates have died while in the custody of the Federal Bureau of Prisons (BOP) since the start of the U.S. COVID-19 pandemic and infection rates are 6.6 times higher than the general population."
> "Around 5200 inmates and over 400 staff have tested positive for coronavirus."

On April 29th it was stated that the "BOP has tested roughly 2700 and nearly 2,000 or 70% have come back positive." There has been NO testing where Ms. Nelson is so there is no way to know if there are any cases here or not because someone (inmate or staff) could be asymptomatic. The current number of cases in Texas is over 103,000, in Tarrant County where Carswell is located there are over 8,000. There have been over 500 inmate deaths nationwide and now 85 in the BOP. These numbers continue to

rise with no end in sight. It has become common knowledge, that there is no way to effectively prevent the coronavirus spread once established in the facility. We continue to see the devastating effects on this pandemic on people who are not in confinement, particularly those with pre-existing conditions such as Ms. Nelson. The medical profession and news report daily about people who are mildly ill one day and dead the next, from respiratory failure. Attached is an affidavit from Dr. Brie Williams who knows first hand about the coronavirus and the prison system. Everyone is well aware of what the virus can do and there is currently no known treatment proven or vaccine. The best reported course is prevention of disease by social distancing and strict antisepsis which is not really possible in a confined and crowded area such as Carswell. Ms Nelson is in a situation which may lead to harm in view of her age (almost 62) and health. If relief is not granted until the virus is rampant at Carswell it may be too late to modify its course.

Based on these factors, Ms. Nelson is requesting home confinement with G.P.S. monitoring and whatever limitations may be appropriate under the current pandemic. Ms. Nelson would like to remind the court that she is and was so remorseful of her actions, that she learned of everything after the fact and wasn't able to

Change what had already been done, she worked
with law enforcement before, during, and after
indictment to bring those responsible to justice. During
her 17 years of incarceration Ms. Nelson has been
in NO trouble and has completed many classes
including learning to speak Spanish.

Discussion:

"The First Step Act," 18 U.S.C. Section 3582(c)(1)(A)
authorizes Courts to modify the terms of imprisonment
as follows:

"The Court, upon motion of the director of
the Bureau of Prisons, or upon motion of
the defendant after the defendant has fully
exhausted all administrative rights to
appeal a failure of the Bureau of Prisons
to bring a motion on the defendant's
behalf or lapse of 30 days from the
receipt of such request by the Warden
of the defendant's facility, whichever is
earlier, may reduce the term of imprisonment
(and may impose a term of probation or
supervised release with or without
conditions that does not exceed the unserved
portion of the original term of imprisonment),
after considering the factors set forth in
Section 3553(a) to the extent that they are

Applicable, if it finds that
    (i) extraordinary and compelling reasons
    warrant such reduction; ... and that such
    a reduction is consistent with applicable
    policy statements issued by the Sentencing
    Commission.

Additionally, in order to be entitled to relief under 18 U.S.C. Section 3582(c)(i)(A)(i), Ms. Nelson must have exhausted her administrative remedies and demonstrate that "extraordinary and compelling reasons" warrant a reduction in her sentence. Ms. Nelson is in compliance and sent her request to Warden Carr on April 29, 2020. The procedure to contact staff is to fill out a paper called a "cop-out" and deposit it in the mailbox and that is what Ms. Nelson did. There is no way to make copies of anything right now and the Officers are refusing to make them copies as well. To this day, she has never received a response and it now exceeds 30 days. Houston v. Lack, 487 U.S. 266, 276, 282, 108 S. Ct. 5379, 101 L.Ed. 2d. 245 (1988)(defining the prison mailbox rule). Brown v. United States, 411 F.Supp. 3d. 446, 452 (S.D. Iowa 2019)("Exhaustion occurs when BOP denies a defendant's application or it's thirty days pass without responding to it.") Ms. Nelson is in full compliance with the statute so therefore this motion is properly brought before this court.

<u>Extraordinary and Compelling Reasons:</u>

"HOSPITAL OF HORRORS"

(Federal Medical Center Carswell Prison) by Betty Brink Of Fort Worth Weekly says it all. "Since 1999 accusations of gross medical neglect have been piling up; in 1999, Beverly Joseph almost died from congestive heart failure after a physician's assistant diagnosed her severe chest pains as a urinary tract infection; in 2000 Janice Pugh died from brain cancer that was never treated; and in 2005 Fortwendel is dying from untreated liver cancer." That list continues to grow, in fact it is suspected a woman died a few weeks ago on Ms. Nelson's unit from a heart attack after being ignored by the officers until it was too late.
   As reported on April 29th news, "a woman at Carswell suffering from Stage 4 breast cancer, said that for two (2) weeks in a row now, she and three (3) other women have not received their regular course of chemo-therapy and was given no reason as to why."
   Ms. Nelson has suffered her own medical night-mares while being incarcerated at Carswell and in light of the COVID-19 pandemic she is afraid for not only her health but her life. Ms. Nelson is currently at a medical care level of 3 which is classified as "unstable, complex chronic care." Ms. Nelson has requested a copy of her medical records but since they are extensive she has not received them. She only has a few pages that she can attach. Approximately March 2014, Ms. Nelson

Was diagnosed with "thyroid carcinoma," but yet
the priority was stated "medically necessary - non-
emergent." (See Ex. A) Any normal person being told they
have cancer would seek immediate and urgent care
but in here Ms. Nelson is unable to care for herself
and is at the mercy of Carswell. United States v.
Campagna, NO. 16 CR 78-01 (LGS) 2020 U.S. Dist. LEXIS
54401, 2020 WL 1489829 (S.D. N.Y March 27, 2020)
("Defendant's compromised immune system taken
in concert with the COVID-19 public health crisis
constitutes an extraordinary and compelling reason
to modify defendant's sentence on the grounds that
he is suffering from a serious medical condition
that substantially diminishes his ability to provide
self-care within the prison environment").

　　　In guidance provided recently by the Department
Of Justice, certain conditions have been identified as
potentially satisfying the standard of an "extraordinary
and compelling reason for release in the context of the
pandemic." They include: 1) asthma, 2) chronic kidney
disease, 3) chronic lung disease, 4) diabetes, 5) hemoglobin
disorders, 6) immunocompromised, including from
cancer treatment, 7) liver disease, 8) heart conditions
including hypertension, and 9) severe obesity. Ms. Nelson
has several of the above listed conditions as documented
on Ex. B listing her health problems since July 9, 2019.
　　　It is well documented that hypertension
issues are associated with increased risk of COVID-19

infection and worse outcomes in lung injury
and mortality. See Ernesto L. Schriffin, John M. Flack,
Sadayoshi Ito, Paul Mutner, and R. Clinton Webb,
"Hypertension and COVID-19," American Journal of
Hypertension, Volume 33, Issue 5, May 2020 at 373-
374." The most common comorbidities in one
report were hypertension (30%), diabetes (19%), and
coronary artery disease (8%)." So both under 18 U.S.C.
Section 3582 (c)(1)(A) and U.S.S.G. Section 1B1.13 there
should be no doubt that Ms. Nelson qualifies for a
reduction in sentence to either time served or home
confinement authorized by the statute.

Section 3553(a) Factors:

        On April 13, 2006 Ms. Nelson was sentenced to
life imprisonment for a crime she did not actively
participate in, she learned about it after the fact.
She cooperated in full with law enforcement, and
even while she has been incarcerated these past
17 years she has never been in any trouble. If
you calculate in the credits awarded in the
"First Step Act," based on a 30-year life term, Ms. Nelson
has done 342 months with good time credits.
Ms. Nelson has taken advantage of many classes
and has even learned to speak Spanish as a second
language. Ms. Nelson is and has been housed in a
low security institution and has minimal criminal

(10)

history. If this Court should grant Ms. Nelson's release she will either reside in Desoto, Tx with her sister or return to Mississippi to live with her daughter. Both of them own their homes and have no criminal history. Ms. Nelson hopes with the proper medical care that she can get her health issues stabilized and return to her job as a truck driver like she was before.

In United States v. Williams, 2020 U.S. Dist. LEXIS 43824, 2020 WL 1751545 (N.D. Fla. April 1, 2020), he had an extensive criminal history which included theft, vagrancy, possession of heroin, possession of a stolen vehicle, illegal gambling, and simple robbery. He was convicted of armed robbery and possessing a firearm and was sentenced to life imprisonment. He suffered a heart attack in prison and the Court held that "he has served much of his sentence while seriously ill and in physical discomfort." "This means that his sentence has been significantly more laborious than that served by most inmates." The Court granted his compassionate release finding that "his deterioration in physical health is sufficiently serious to satisfy the medical criteria for reduction." "The Court went on to state, it also means that further incarceration in his condition would be greater than necessary to serve the purposes of punishment set forth in Section 3553 (a)(2), ("quoting United States v. McGraw, 2019 U.S. Dist LEXIS

78370, 2019 WL 2059488 (S.D. Ind. May 9, 2019). See
also United States v. Davis, U.S. Dist. LEXIS 40652,
(D. Maryland March 5, 2020), who was convicted of
21 U.S.C. Section 841 and 846, who was also
sentenced to life imprisonment. He suffered from
hypertension and coronary artery disease.
    In the Fifth Circuit, United States v. Ennis,
2020 U.S. Dist. LEXIS 84957 (W.D. Texas May 14, 2020),
he was convicted of 21 U.S.C. Section 841, he had
a lengthy criminal history and was sentenced to
life Imprisonment. His care level was only a 2
and with degenerative disc disease and spinal
stenosis the court held that "It qualifies as a
serious deterioration in physical or mental health
because of the aging progress." So after serving 17 years,
Judge Martinez granted his compassionate release.
    In a recent case involving Carswell, the
Court stated the women "are unable to provide
self-care within the FMC Carswell because they are
unable to practice effective social distancing and
have hygiene needed to minimize her risk of
exposure." United States v. Reddy, 2020 U.S. Dist LEXIS
82208, (E.D. Michigan May 11, 2020).

Conclusion:

    Although her original release date may be
far off, the threat of COVID-19 is at her doorstep.

As of June 17, 2020 there were 15,000 cases in Dallas County, and Texas exceeded New York in the highest one day total of new cases with 413. The number of cases in Texas alone exceeds 103,000. In Tarrant County, where Carswell is located there are 7,822 cases and has been 19 deaths. Of course these numbers increase on a daily basis so are probably higher when this is read. There have been over 500 inmate deaths nationwide and 85 of them have been in the BOP system. At least three (3) of the deaths came from FMC Fort Worth, the men's unit located within a few miles from Carswell that has had the second highest number of positive cases within the Federal Prison System. They were ages 61, 78, and 45 who all had underlying medical issues that made them more vulnerable to the coronavirus. If the BOP's response and procedures didn't work to protect them then how can the Government claim that the situation is "under control" and being managed? With numbers of hospitalizations up 108% since Memorial Day weekend, it's safe to say that Texas doesn't even have it "under control."

Ms. Nelson has multiple health issues that make her vulnerable. When she was sentenced she was not given a death sentence so why is this court making her face one now?

Ms. Nelson is rehabilitated from her time

here, is not a danger to society, and like Williams has spent most of her time in pain and discomfort.

WHEREFORE, PREMISES CONSIDERED Defendant, Kathleen Nelson, prays this HONORABLE COURT after consideration of the factors set forth in 18 U.S.C. Section 3582(c)(1)(A) will grant her compassionate release and order her immediate release.

Respectfully Submitted,

Kathleen Nelson

Kathleen Nelson, Pro Se
Reg.# 06883-043
Federal Medical Center- Carswell
P.O. Box 27137
Ft. Worth, Tx 76127

## CERTIFICATE OF SERVICE

I certify on June 25, 2020, I mailed a copy of "Defendant's Emergency Motion and Brief for Compassionate Release in Response to COVID-19 Pandemic," to Harold Brittain, 501 E. Court St., Jackson, MS 39201.

Kathleen Nelson